# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KATHRYN M. LESTER, | ) | 1:09-cv-01730 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Kathryn M. Lester ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 & 10.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed applications for disability insurance and supplemental security income benefits in November 1994 and March 1996. *See* AR 56-59, 193-196. The applications were granted on June 25, 1996. AR 203-212. Subsequently however, Plaintiff's disability was found to have ceased on July 30, 2004, and benefits were terminated. AR 301-309; *see also* AR 246-249, 290-292. She requested a hearing before an Administrative Law Judge ("ALJ"). AR 288. A hearing was scheduled for January 12, 2005, but Plaintiff failed to appear. AR 274-283. Thereafter, on January 20, 2005, the Commissioner issued a denial of benefits. AR 270-272.

On October 24, 2006, Plaintiff filed another application for supplemental security income benefits. AR 313-320. Plaintiff requested a hearing before an ALJ. AR 295-298. A hearing was held before ALJ Stephen Webster on November 13, 2007, in Bakersfield, California. AR 673-694. ALJ Webster issued an order denying benefits on January 11, 2008. AR 411-417. On May 30, 2008, the Appeals Council remanded the matter for further proceedings. AR 579-583. Thereafter, on December 9, 2008, ALJ Bert Hoffman, Jr. held a hearing in Bakersfield, California. AR 695-732. On February 27, 2009, ALJ Hoffman issued an order denying benefits and finding that Plaintiff was no longer disabled as of July 30, 2004. AR 43-55. Ultimately, on September 25, 2009, the Appeals Council denied review. AR 7-10; *see also* AR 11-14.

**2008 Hearing Testimony**[3]

> Ms. Lester was 41 years old as of July 30, 2004, the date her conditions were found to have medically improved sufficiently to render her no longer disabled (AR 313, 43-55). Since the original onset of her disability in 1996, her physical condition has worsened: The bone spurs in her back cause back pain "constantly" except when she is lying down and doing nothing (AR 703-05). She also has arthritis in all her joints, which even prevents such activities as opening a bottle of pills (AR 713). She can walk up to ten minutes, sit up to 30 minutes, and cannot easily bend (AR 705). She sees a pain management specialist for injections and takes Darvocet up to five times a week (AR 704). She takes Wellbutrin and Paxil for her psychiatric conditions (AR 704). She saw Dr. Khokher between 2006 and the beginning of 2008 until she lost her Medicare coverage (AR 706). She now sees Dr. Fernandez (AR 706). She also sees a psychologist, Dr. Davis,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Because Plaintiff's credibility is not directly at issue, the summary of the hearing testimony is taken from Plaintiff's Opening Brief at pages two through three.

2

approximately once a month as well as a psychiatrist (AR 706-07). In 2007, she had attempted to return to school and to work, but being around others, the stresses entailed, and her difficulties understanding and recalling the information made her quit (AR 708-10).

As to her daily activities, Ms. Lester is presently living at a friend's house (AR 714). She usually wakes up around 9:00 or 10:00 in the morning but suffers severe insomnia (AR 714). She usually watches TV during the day – up to seven hours a day – and sometimes walks outside to pet the animals in the backyard (AR 715, 722). She can feed herself but cannot perform tasks such as laundry or changing the sheets because she cannot bend over or lift anything (AR 715). She does try to "pick up after [herself]," which entails putting her dishes in the dishwasher, washing out the sink, or doing some cooking (AR 719). She used to breed and raise rabbits but gave that up (AR 715-16). When she did oversee the rabbit litters, a friend would help her (AR 716). She goes to church on Wednesday nights but not usually on Sundays, because she usually doesn't want to get up (AR 719-20). She presently weighs 210 pounds at a height of five feet two inches (AR 725). She had gained about 15 pounds in the preceding three to four weeks (Id.).

**Medical Record**

The entire medical record was reviewed by the Court, however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ's Findings**

Plaintiff received benefits between 1996 and July 2004, when it was determined that she was no longer disabled. Following challenges to the finding Plaintiff was no longer disabled, in 2009, ALJ Hoffman determined that Plaintiff had not engaged in substantial gainful activity since July 30, 2004, the date disability ended. It was also determined that as of July 2004 Plaintiff had medically determinable impairments, including: major depressive disorder, recurrent; and bilateral facet joint syndrome. AR 45. Nonetheless, the ALJ determined that none of these impairments met or exceeded the severity one of the listing impairments. AR 45-46. The ALJ determined that medical improvement occurred on July 30, 2004. AR 46.

Based on his review of the medical evidence, the ALJ determined that Plaintiff had the RFC to perform a full range of light work, limited to simple repetitive tasks and limited public contact. AR 46-47. The ALJ found that Plaintiff did not have past relevant work. AR 54. Ultimately, the ALJ determined that Plaintiff had the RFC to perform a significant number of jobs that exist in the national economy. AR 54-55.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, and considering the additional steps required where a determination addresses whether a claimant continues to be disabled, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since July 30, 2004; (2) has medically determinable impairments; (3) does not have an impairment or combination of impairments which meets or equals the severity of one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) experienced medical improvement as of July 30, 2004; (5) was able to perform light work, limited to simple repetitive tasks with limited public contact; (6) and has the RFC to perform a significant number of jobs that exist in the national economy. AR 45-55.

Here, Plaintiff argues that the ALJ failed to properly consider the opinions of the treating physicians and that he misinterpreted the opinions of the consultative examiners; and (2) the ALJ improperly applied the Medical Vocational Guidelines or Grids. (Doc. 9 at 9-16.)

## DISCUSSION

### *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erroneously rejected the opinions of treating psychiatrists Khokhar, Davis and Fernandez. Further, Plaintiff argues the ALJ misinterpreted the opinions of consultative examiners Patel and Zhang. (Doc. 9 at 9-14.) Defendant counters that the ALJ properly weighed all medical opinion evidence. (Doc. 17 at 7-13.)

**1.    Applicable Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n.4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

**2.    ALJ Hoffman's Summary of the Opinions at Issue**

ALJ Hoffman considered the relevant medical evidence as follows, in pertinent part:

> The supporting medical evidence shows that a few months prior to the cessation date, the claimant told her treating psychiatrist, Richard Burdick, M.D., that she was going to a rabbit show in February, and had ten rabbits to show, including three babies and three new rabbits. In June 2004, the claimant told Dr. Burdick that she was tired of being abused by her husband's children, so she packed up and left. The doctor noted that the claimant's mood and affect were much better. I note that these activities are inconsistent with an individual with

6

disabling mental and physical impairments. In July 2004, the claimant told Dr. Burdick that she was not sure she could work, but wanted to work and was trying to get a job.

. . . Shailesh Patel, M.D. performed a psychiatric consultative examination of the claimant in June 2004. The claimant lived alone, cleaned her house, took care of her dogs and rabbits, and socialized with family and neighbors. The claimant reporting being suicidal in the past, but denied current suicidal ideations. She had no delusions or obsessions. She was able to do simple math, name the current President, and repeat a three-digit number backwards. Her fund of knowledge was good, and her memory was fair. Dr. Patel opined that the claimant was able to understand, remember, and carry out simple instructions, and should be referred to CalWorks for evaluation for work training.

There is no record of treatment between July 2004 and October 2006, when the claimant was admitted to the hospital for five days with suicidal ideation with no plan, and was diagnosed with bipolar disorder. I note that on admission, the claimant's urine tox screen was positive for benzodiazepines. The claimant reported being independent in all areas including self-care, meal preparation, shopping, laundry, cleaning, driving and finances. Her leisure activities included raising rabbits, puppies, animals and car races. She listed her social contacts as church, her sister, and rabbit breeders. She reported recent alcohol use, but no marijuana use since high school. When the claimant was evaluated by the staff psychiatrist, Dr. Khokhar, he estimated her GAF score at 10, which indicates "persistent danger of severely hurting self or others," "persistent inability to maintain minimal personal hygiene," or "serious suicidal act with clear expectation of death". I do not accept the doctor's GAF estimate because his exam showed the claimant's appearance was neat and her behavior was cooperative. She was not clearly suicidal because she had no plan and certainly no expectation of death. Nursing notes indicate the claimant interacted with peers and staff. After three days, the claimant had no suicidal ideation and her depression was "2" out of 10. The claimant was discharged the next day with a GAF score of 45 indicating serious symptoms.

Dr. Khokhar continued to see the claimant after discharge. She continued to have no delusions, hallucinations, or suicidal ideation. The claimant described a history of mood swings. The doctor diagnosed bipolar disorder and prescribed Lithium, Ambien, Risperdal, Buspar, and Synthroid.

However, when the claimant was evaluated for services by Thelma Francis, Psy.D., a therapist in Dr. Khokhar's office, she was diagnosed with major depressive disorder. Dr. Francis noted in November 2006 that the claimant was doing and feeling somewhat better and was working on relationship issues. In December 2006, Dr. Khokhar stated that the claimant was doing all right. Her mood was good and her sleep and appetite were good. He diagnosed mood disorder not otherwise specified. In February 2007, the claimant had enrolled in adult school classes. She bought another car to have lower payments, and was being more assertive with her husband. The claimant was off her medication, and was only taking Lunesta for sleep. The claimant said she was stable and doing fine. Dr. Francis planned to discontinue therapy and allow the claimant to follow up as needed. When the claimant saw Dr. Khokhar in April 2007, he discontinued Lithium since the claimant stopped taking it. Two weeks later, the doctor discontinued Depakote, and the following month he discontinued Abilify. The claimant was still attending school. In December 2007, the claimant had appropriate affect, good sleep, and good appetite. Her medications were Wellbutrin and Buspar.

Dr. Khokhar provided a letter dated February 4, 2008, in which he indicated that the claimant had bipolar manic disorder and was taking Seroquel, Wellbutrin, Buspar, and Lunesta. He said the claimant's mood swings,

depression, anxiety, and insomnia created "barriers for comprehension and focus in any type of work and social atmosphere." He opined that the claimant was totally disabled.

I give no weight to Dr. Khokhar's opinion because it is vague and unquantified and is not useful to me in assessing the claimant's residual functional capacity. Additionally, it invades the issue of disability that is reserved to the Commissioner of Social Security under Social Security Ruling 96-5p.

The claimant began attending Clinica Sierra Vista Behavioral Health Center in May 2008. Donald Davis, Ph.D., who prepared the intake assessment, diagnosed the claimant with major depressive disorder and generalized anxiety disorder and referred her to the psychiatrist, Dr. Fernandez, for medication management. I note that Dr. Davis' review of the records showed that the claimant had poor compliance with her psychiatric medication and office visits.

Dr. Fernandez evaluated the claimant in June 2008. He noted that the claimant was moderately impaired in housing, self-care, occupation, relations with others, education, physical health, and legal living arrangements. He also diagnosed the claimant with major depressive disorder, recurrent, rather than bipolar disorder. In July 2008, Dr. Fernandez noted that the claimant's compliance was only fair as she had discontinued Trazodone one week earlier. In August 2008, Dr. Fernandez stated that the claimant's disability was moderate. In response to "able to work?" the doctor checked N/A. In other words, he did not indicate she was not able to work, but seemed to respond that she was not working at that time. The claimant repeatedly told the doctor that she did not engage in substance use, but she testified otherwise.

In response to the Appeals Council's order, I requested a psychological consultative evaluation of the claimant, which was performed by J. K. Zhang, Psy.D., in October 2008. The claimant drove to the exam unaccompanied. The claimant said she usually rose around 10 a.m. and watched television for the rest of the day. However, she then said she sometimes does housework, socialized with friends, and enjoys going to listen to a local band. The doctor described the claimant's grooming and hygiene habits as adequate. Her speech and psychomotor activity were within normal limits. She described her mood as depressed and irritable, but she denied recent suicidal ideation or intent. Dr. Zhang stated the claimant's cognitive functioning appeared to be below average, but she had adequate memory and attention. She was able to interact appropriately. She had no signs of a thought disorder. Her insight was limited and her judgment was fair. Dr. Zhang diagnosed the claimant with depressive disorder, not otherwise specified and borderline personality disorder. According to the claimant's description of her problems, the doctor thought the claimant's primary impairment was medical rather than mental. He stated the claimant was able to understand, remember, and carry [out] simple and complex instruction[s], but her capacity to interact appropriately with supervisors, coworkers, and the public was compromised at times.

I give substantial weight to Dr. Zhang's opinion because it is consistent with the opinion of the prior consultative examiner and the State agency. However, I have limited the claimant to simple tasking to accommodate her allegations of concentration and memory issues. I agree that the claimant has limited ability to maintain social functioning, although she seems to have friends and had a good report from a former employer.

Thus, the evidence pertaining to mental health issues shows that the claimant had one fairly recent period of severe symptoms, but they were related to her separation from her husband and she quickly improved. Her activities, including raising and showing animals, going to school and working part-time are consistent with an individual who is able to perform at least simple, repetitive

    work. I limited her social functioning because of her allegations of problems with people.

AR 47-50, internal citations omitted.

### 3. Analysis

Plaintiff argues that the ALJ's objections to Dr. Khokhar's opinion were not legitimate because Dr. Khokhar's opinion is "not vague and would have been easily incorporated into the disability determination." (Doc. 9 at 10.) This Court's review of Dr. Khokhar's records reveals the ALJ's reason was in fact specific and legitimate: the opinion is vague because it is not based upon objective medical evidence. AR 544-572. *Murray v. Heckler*, 722 F.2d at 502. The ALJ need not recite the incantation "I reject the treating physician's opinions because . . ." so long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt the treating physician's opinion. *Magallanes,* 881 F.2d at 755. Plaintiff's assertion that Dr. Khokhar's finding "is a valid medical opinion regarding specific aspects of her mental function that would have been directly applicable to the disability determination" (Doc. 9 at 11) is undermined by the lack of objective medical evidence. A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. § 416.927(e). "Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

    With regard to the opinion of Dr. Davis, Plaintiff alleges the ALJ did not "specifically acknowledge" the opinion and thus did not provide sufficient rationale for refusing to credit Dr. Davis' opinion. (Doc. 9 at 11-12.) Donald Davis, Ph.D. prepared an intake assessment for Clinica Sierra Vista Behavioral Mental Health Center on June 20, 2008. The ALJ's findings specifically reference these records at page forty-three of the administrative record wherein the following notation appears: "I held the record open for the receipt of additional medical evidence. After the evidence from Clinica Sierra Vista was received and added as Exhibits 66 and 67, the record was closed." In his findings, the ALJ stated as follows:

>The claimant began attending Clinica Sierra Vista Behavioral Health Center in May 2008. Donald Davis, Ph.D., who performed the intake assessment, diagnosed the claimant with major depressive disorder and generalized anxiety disorder and referred her to the psychiatrist Dr. Fernandez, for medication management. I note that Dr. Davis' review of the records showed that the claimant had poor compliance with her psychiatric medication and office visits.

AR 49. Dr. Davis saw Plaintiff on a single occasion - for an intake assessment. AR 617-625. Additionally, a review of the record reveals that most of the information provided to Dr. Davis was provided by Plaintiff herself. *See* AR 617-620 ("Kathryn reported" or "Kathryn reports"). The doctor's mental status evaluation noted inappropriate attire and neglected grooming, rapid speech and loud tone. Her thought process involved poor attention and concentration, but she was oriented times four with an average intelligence and fair memory, albeit a depressed and anxious mood. AR 621-622. Dr. Davis' functional impairment assessment was based in large part of Plaintiff's subjective reporting. *See* AR 623-624.

The Court questions whether Dr. Davis could properly be designated as a treating physician in the first instance. *See Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994). Nonetheless, an opinion based to a large extent on a claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). A brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 751. In sum, the ALJ did not err with regard to the opinion of Dr. Davis because it was based largely on Plaintiff's own reported symptoms and limitations.

Plaintiff also argues that the ALJ erred because he "did not specifically credit or reject the functional capacity opinion of treating physician Fernandez." (Doc. 9 at 12.) Again, the ALJ is not required to use magic words, i.e., "I reject the treating physician's opinions because . . ." where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt the treating physician's opinion. *See Magallanes,* 881 F.2d at 755. Such is the case here. Clearly, the ALJ found Dr. Fernandez's opinion to be lacking in objective medical evidence. Further, this Court finds the ALJ's interpretation of Dr.

Fernandez's response to an inquiry regarding whether Plaintiff was able to work was reasonable: to wit, Dr. Fernandez believed Plaintiff was capable of work.

Here too, the treating physician opinions are contradicted by the opinions of other physicians. Those contradictory opinions constitute specific and legitimate reasons in and of themselves. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

Next, Plaintiff argues that the ALJ's finding that the opinions of the consultative examiners - Patel and Zhang - were consistent with his own functional capacity determination was error because "both doctors endorsed limitations in excess of those credited by the ALJ, and the ALJ provided no reasons whatsoever for disregarding those additional limitations." (Doc. 9 at 13-14.) Plaintiff claims Dr. Patel's finding that Plaintiff's attention and concentration were "only fair" and Dr. Zhang's finding that she would have "'occasional difficulty sustaining adequate concentration . . .'" is not necessarily accommodated by a limitation to simple tasks. However, the Court is not persuaded by Plaintiff's argument, nor, more importantly, has Plaintiff provided any legal authority whatsoever in support of the argument.

### *The ALJ's Application of the Grids*

Next, Plaintiff argues that the ALJ's application of the Grids at step five was erroneous. More particularly, Plaintiff contends the ALJ's mere declaration that Plaintiff's non-exertional limitation to simple, repetitive tasks, with limited exposure to the general public has little to no effect on the occupational base of unskilled light work, is not supported by the evidence. (Doc. 9 at 14-15.) Defendant counters that the ALJ properly applied the Grids to find Plaintiff was not disabled. (Doc. 17 at 13-15.)

**1.      Applicable Legal Standards**

The claimant has the initial burden of proving the existence of a disability within the meaning of the Social Security Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him or her from engaging in his or her previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) & 416.920(f). However, once the claimant establishes a prima facie case of disability, the burden of going forward with the evidence shifts to the Secretary. *Hammock v. Bowen*, 867 F.2d 1209 (9th Cir. 1989). The Secretary bears the burden of establishing the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background. In an appropriate case, the Secretary may meet this burden through application of the medical-vocational guidelines set forth in the regulations.[4] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). If the guidelines do not accurately describe a claimant's limitations, the Secretary may not rely on them alone to show availability of jobs for the claimant. *Desrosiers v. Secretary*, 846 F.2d 573 (9th Cir. 1988).

When the Grids do not match the claimant's qualifications, the ALJ can either (1) use the Grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007). However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of the guidelines. Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Secretary will be required to obtain expert vocational testimony regarding the availability of other work. *See, e.g., Polny v. Bowen,* 864 F.2d 661 (9th Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey*

---

[4] For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

*v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985).

**2.   ALJ Hoffman's Use of the Grids**

As to the application the Grids, the ALJ stated:

> Beginning on July 30, 2004, if the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

AR 54-55.

**3.   Analysis**

ALJ Hoffman found Plaintiff had the RFC to perform light work with limited public contact. AR 47. The ALJ further found that Plaintiff's additional limitations had little or no effect on the occupational base of unskilled light work. AR 54-55. He applied the guidelines as a framework and determined that jobs exist in significant numbers in the national economy that the Plaintiff can perform. AR 54-55.

Light work represents "substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs, and thus generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work." *See* 20 C.F.R.§ 404, Subpart P, Appendix 2, § 202.00. Unskilled work requires little or no judgment to do simple duties that can be learned on the job or in a short period of time and does not focus on working with people. *See* 20 C.F.R. § 416.968. Social Security Ruling ("SSR") 85-15, which discusses the factors that should be evaluated when examining mental impairments, supports the contention that limited public contact would be consistent with unskilled light work:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work included the ability (on a substantial basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and

to deal with a changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

In *Hoopai v. Astrue*, the Ninth Circuit held that satisfaction of the "threshold requirement that a claimant prove her limitations are severe is not dispositive of the . . . determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai*, 499 F.3d at 1076.

Here, substantial evidence supports the ALJ's determination that Plaintiff's major depressive disorder was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert.  The ALJ found the medical record evidence pertaining to Plaintiff's mental health establishes that, but for one short period of "severe symptoms," Plaintiff's "activities, including raising and showing animals, going to school, and working part-time are consistent with an individual who is able to perform at least simple, repetitive work." ALJ Hoffman limited Plaintiff's social functioning "because of her allegations of problems with people." AR 50.  This Court's review of the medical record supports the ALJ's determination as there is no evidence to establish Plaintiff's depression significantly affects her ability to work. Dr. Patel's examination resulted in a diagnosis of major depressive disorder, moderate, recurrent and generalized anxiety disorder, with a GAF score of 55.  Dr. Patel specifically found Plaintiff has the ability to interact with coworkers and supervisors, as well as the public.  While she has the ability to understand, remember and carry out simple instructions, she does not have similar abilities where complex instructions are involved.  The doctor found Plaintiff's attention and concentration were fair at examination, and that she was capable of work.  AR 366.  Moreover, the progress notes from Dr. Burdick do not serve as evidence to establish Plaintiff's depression significantly affects her ability to work.  *See* AR 368-375.  The Psychiatric Review Technique prepared by psychiatrist Marina C. Vea, M.D., found Plaintiff to be mildly affected in the areas of restriction of activities of daily living and difficulties in maintaining social functioning.  Dr. Vea assigned a moderate restriction to Plaintiff's difficulties in maintaining concentration, persistence, or pace.  AR 378.  Psychiatrist Harvey Biala, M.D., agreed.  *See* AR 384-387.  In a

mental residual functional capacity assessment, Dr. Vea found Plaintiff to be moderately limited in only two of the twenty areas; otherwise Plaintiff was found to have no significant limitation. AR 379-380.  Dr. Biala also found only moderate limitation in two of twenty areas, otherwise Plaintiff was not significantly limited.  AR 388-389.  Dr. Vea specifically found Plaintiff has the ability to understand, remember and carry out simple instructions, can sustain concentration, attention, persistence and pace, relate and interact with coworkers and the public, and can adapt to changes in the workplace.  AR 381.  Again, Dr. Biala found similarly.  *See* AR 390.

ALJ Hoffman found that Plaintiff should have limited public contact, but he did not identify other non-exertional limitations that would erode the occupational base.  As stated above, use of the Grids is precluded only if the ALJ determines that the claimant's non-exertional limitations significantly limit the range of work permitted by her exertional limitations.  The evidence shows that Plaintiff's non-exertional limitation of limited public contact does not significantly limit the range of light work.  Given these circumstances, the ALJ's use of the Grids was proper.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Kathryn M. Lester.


IT IS SO ORDERED.

Dated:   **March 14, 2011**            /s/ **Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE